## SILVER DEPOSIT ACCOUNT LEASE AGREEMENT

This Silver Deposit Account Lease Agreement ("Lease") is made and entered into the 07 day of May, 20 19, by and between John Glahn ("Lessor") and West Hills Capital, LLC or "Lessee").

WHEREAS, Lessor is the beneficial owner of certain silver held on deposit at First State Depository of Delaware ("FSDC"), which is held in Lessor's name or the name of Lessor's self-directed individual retirement account;

WHEREAS, Lessor desires to lease the silver held on deposit at FSDC to Lessee, and Lessee desires to lease Lessor's silver held on deposit at FSDC, on the terms and conditions set forth herein;

NOW, THEREFORE, in consideration of the rents to be paid, together with the mutual covenants and agreements hereinafter provided, to be performed by the Lessors or the Lessee, it is agreed as follows:

### 1. SILVER DEPOSIT ACCOUNT LEASE AGREEMENT:

(a)     The Lessor does hereby let and lease to the Lessee, the following-described silver coins held on deposit at FSDC in the name of Lessor, or in the name of Lessor's self-directed IRA:

 10,000  silver coins in IRA Account           _JG_  Initials

 _____  silver coins in Non-IRA Account     _____ Initials

(b)     During the Lease Term, as defined herein, Lessor specifically authorizes Lessee to trade or alter the form of the Leased Silver in the Lessee's normal course of business. Lessor specifically authorizes Lessee to use the Leased Silver to complete sales of silver by Lessee, or its successors or assigns, to customers desiring to purchase silver. Lessor acknowledges that the Leased Silver delivered to the Lessee under this Lease is fungible in nature and that Lessee's obligation to return the Leased Silver is specifically limited to returning like weights and grades, as may from time to time constitute industry standard practices.

(c)     Lessor acknowledges that Lessee may maintain, in FSDC's possession and/or control, the Leased Silver or silver with the same form, weight, and grade which the parties agree is fungible with the Leased Silver.

(d)     At the end of the Lease Term, Lessee shall ensure that the Leased Silver described above, and any additions thereto pursuant to the terms of this Lease, are on deposit at FSDC in the name of Lessor or Lessor's self-directed IRA, provided, however, that **Lessee's obligation is to return similar property in the form, weight**

and grade as was originally borrowed hereunder and not the specific original silver placed in the account at FSDC, it being recognized that the Leased Silver is fungible in nature. However, at the expiration of the Lease Term, or any extension or renewal thereof, Lessor and Lessee may agree that the Leased Silver will be returned in a different form, weight and grade as originally borrowed, as provided for herein or in other agreements between the parties.

    (e)    Lessor shall not be responsible for Lessee's use of the Leased Silver during the term hereof.

    (f)    If Lessee shall fail to return any Leased Silver (or its fungible equivalent) to Lessor when due hereunder, then notwithstanding anything in this Lease to the contrary, for each day during the period, from and including the date that such return is due, but excluding the date such Leased Silver is returned, Lessee agrees to pay all associated fees and costs of Lessor based on the then-current market situation. Such fees and costs shall be payable in a reasonable time, upon written demand of Lessor. Failure to make such written demand within 90 days of the termination of this Lease shall result in a waiver of such fees and costs.

    (g)    Notwithstanding anything to the contrary contained herein, Lessor acknowledges and agrees that Lessee shall not be liable for any loss resulting from any negligent, reckless, or fraudulent actions by FSDC or by any other third party.

## 2. TERM:

    (a)    The term of this Lease shall commence on May 07, 20 19 ("Lease Commencement Date"), and shall continue month-to-month ("Lease Term") provided, however, that the Lease Expiration Date shall automatically extend for an additional one (1) month terms unless either the Lessor or the Lessee provided written notice of termination to the other party.

    (b)    Lessor may terminate this Lease at any time by providing fifteen (15) days written notice to Lessee. If Lessor terminates this Lease at any time prior to the end of the Lease Term.

    (c)    After the termination of the Lease Term, Lessee shall return the Leased Silver or similar property in the form, weight and grade as was originally borrowed hereunder and not the specific original silver placed in the account at FSDC, it being recognized that the Leased Silver is fungible in nature, within forty-five (45) days after the termination of the Lease Term.

## 3. LEASE PAYMENT:

    (a)    In exchange for the right to use the Leased Silver pursuant to this Lease, Lessee unconditionally promises to pay Lessor a monthly payment based on the number of coins held by Lessor, as determined below in subsection (b), multiplied by the per coin amount for Lessor's applicable tier, as determined below in subsection (b), as follows:

| Tiers: | Coins on Deposit | WHC Pays Per Coin: | Minimum Annual | Maximum Annual |
|---|---|---|---|---|
| Tier 1 | 1,000-1,999 | $0.01 | $120.00 | $239.88 |
| Tier 2 | 2,000-2,999 | $0.02 | $480.00 | $719.76 |
| Tier 3 | 3,000-3,999 | $0.03 | $1,080.00 | $1,439.64 |
| Tier 4 | 4,000-4,999 | $0.04 | $1,920.00 | $2,399.52 |
| Tier 5 | 5,000-5,999 | $0.05 | $3,000.00 | $3,599.40 |
| Tier 6 | 6,000-6,999 | $0.06 | $4,320.00 | $5,039.28 |
| Tier 7 | 7,000-7,999 | $0.07 | $5,880.00 | $6,719.16 |
| Tier 8 | 8,000-8,999 | $0.08 | $7,680.00 | $8,639.04 |
| Tier 9 | 9,000-9,999 | $0.09 | $9,720.00 | $10,798.92 |
| Tier 10 | 10,000 or more | $0.10 | $12,000.00 | Unlimited |

(b)     For purposes of subsection (a), the number of coins held by Lessor and Lessor's applicable tier shall be determined based on Lessor's lowest number of coins on deposit between the 15th of the previous month through the 14th of the current month that payment is being made pursuant to subparagraph (c). No monthly lease payment shall be made for coins on deposit less than Tier 1's minimum.

(c)     Lessee shall pay Lessor on the 15th of each month, PROVIDED, HOWEVER, that Lessor's coins must be on deposit for at least thirty (30) days before being eligible for any applicable tier hereunder. Lessor's coins on deposit for less than thirty (30) days prior to the 15th of any month will not be taken into account in determining Lessor's applicable tier.

(d)     Lessor's holding coins in non-IRA accounts shall have the option to receive monthly payments in cash or additional silver coins, or a combination of both. Lessor may change Lessor's election by providing written notice to Lessee at least fifteen (15) days prior to the effective date of the change in Lessor's election. Lessor's initial election is to receive (select only one):

☐ receive payment in additional silver coins

☐ receive payment by E-Check

☐ receive payment in a combination of cash and additional silver coins

_____% or $_____ amount to receive by E-Check

☑ 100% Cash Payment to IRA

(e) Lessor's holding coins in IRA accounts are required to receive all monthly payments in the form of additional silver coins.

(f) Any cash remainder from the monthly lease payment used to purchase additional silver coins remaining after the purchase of additional silver coins shall be held as cash on behalf of the Lessor by Lessee, and shall be added to the following monthly lease payment to acquire additional silver coins.

(g) The portion of the monthly lease payment that is used to acquire additional coins shall be used to purchase coins from Lessee at the Ask Premium, which is the premium over spot price. The Ask Premium may change at any time due to fluctuations in the market conditions.

(h) In the event the Lessee desires to sell coins to Lessee, such sale shall be at the Bid Premium, as determined by Lessee. The Bid Premium may change at any time due to fluctuations in the market conditions.

(i) Lessee also agrees to pay all setup and ongoing annual fees relating to Lessor's Leased Silver account. The value of which commonly ranges from $800.00 to $1,200.00, and includes but is not limited to: **Transfer, Set-up, Opening, Application, Closing Prior Account, Transaction, Annual, Bank Wire, Maintenance, and Storage**.

(j) It is expressly understood and agreed by Lessor and Lessee that under no circumstances shall Lessee be responsible for the payment of any taxes, interest or penalties relating to taxes incurred by the Lessor to the Internal Revenue Service, or any other state of foreign government tax entity.

### 4. REPRESENTATIONS AND WARRANTIES:

(a) All Leased Silver shall be transferred to Lessee at FSDC, or such other location as the Lessee shall designate on the Lease Commencement Date. Lessor specifically agrees to deliver all Leased Silver to FSDC, or such other place as Lessee shall designate.

(b) Lessor specifically represents and warrants that Lessor understands that the "Silver Deposit Account" with Lessee shall track the value of Lessor's Leased Silver, but the Silver Deposit Account shall not actually hold any Leased Silver.

(c) Lessor specifically warrants that Lessor is authorized to enter into this Lease either individually or on behalf of and as the beneficial owner of its self-directed IRA and to deliver the Leased Silver to Lessee hereunder.

(d) Lessor specifically warrants to Lessee that Lessor holds good and marketable title to the Leased Silver, free and clear of all liens, pledges, mortgages, encumbrances, easements, charges, claims, restrictions, purchase options, and/or agreements limiting the use or transfer of the leased metal.

(e) Lessor and Lessee hereby represent and warrant that each is duly authorized to enter into this Lease.

(f) The person executing this Lease and all other documents, agreements, schedules hereunder on behalf of Lessor or Lessee is authorized to do so.

(g) Lessor and Lessee hereby represent and warrant that the execution of this Lease does not violate any agreement by which it is bound or by which any of its assets are affected.

## 5. DEFAULT:

In the event that Lessee shall breach any of the covenants or obligations to be performed by Lessee pursuant to this Lease, the Lessor shall, upon the occurrence of any such breach and the failure by Lessee to cure such default within ten (10) days of written notice from Lessor, have the right to immediately and at any time thereafter to liquidate (or close out) any and all outstanding Leases and to liquidate any and all Leased Silver and other property held by Lessee pursuant to this Lease to satisfy the Lessee's obligation to Lessor, if any. Lessee shall remain liable for, and shall promptly remit to Lessor, all costs associated with liquidation of the Lease.

Lessor's rights under this Section shall be in addition to, and not in limitation of, any other right that Lessor may have, whether by agreement, operation of law or equity, or otherwise. In particular, nothing herein shall limit Lessor's right to reclaim or seek to reclaim any silver coins to which it retains title under the terms of this Lease.

## 6. NON-REGULATED NATURE OF TRANSACTION:

This Lease authorizes the parties to enter into a transaction in a "non-regulated physical commodities" which is the Leased Silver. A physical transaction of silver coins is bound by the Uniform Commercial Code and is not subject to any additional regulations by any governmental or self-regulatory authority.

Nothing contained in this Lease shall constitute a solicitation to trade or authorization to enter into, or shall entitle the parties to enter into regulated futures, options on regulated futures, securities or options on securities.

Unless alternate forms of delivery are agreed upon by Lessee, all transactions entered into under this Lease shall be satisfied by the actual taking or making of physical delivery of the merchandise bought, sold, borrowed or lent subject to industry standards and practices.

The Lessee specifically acknowledges and understands that the Commodity Exchange Act, as amended does not cover the "non-exchange traded cash transactions" in physical precious metals such as the silver coins subject to this Lease.

## 7. INDEMNIFICATION:

(a) Lessor and Lessee shall defend, indemnify, and hold the other party harmless from, against, and in respect of any and all claims, demands, lawsuits, proceedings, losses, assessments, fines, penalties, administrative orders, obligations, costs, expenses, liabilities, and damages, including, without limitation, interest,

penalties, and reasonable attorneys' fees and costs of investigation ("Claims"), which arise or result from or relate to:

       i.       the untruth, breach, or failure of any representation or warranty made by Lessor or Lessee in this Lease;

      ii.      the breach by Lessor or Lessee of, or failure by Lessor or Lessee to perform, any of its or their covenants, commitments, agreements, or obligations under this Lease;

     iii.     Lessor shall indemnify Lessee for any claims related to the Leased Silver prior to the Lease Commencement Date and/or any claims related to Lessor's actions, including but not limited Lessor's actions related to the Leased Silver, at any time prior to or after the date of the Lease; and

     iv.     Lessee shall indemnify Lessor for any claims by third parties related to Lessee's use of the Leased Silver pursuant to the terms of this Lease.

(b) Whenever any claim may arise for indemnification pursuant to this Section, the party entitled to indemnification ("Indemnified Party") shall provide written notice to the other party ("Indemnifying Party") within fifteen (15) days after becoming aware of the right to indemnification and, as expeditiously as possible thereafter, the facts constituting the basis for such claim. In connection with any claim giving rise to indemnity hereunder, resulting from or arising out of any claim or legal proceeding by a person who is not a party to this Lease, the Indemnifying Party, at its sole cost and expense and upon written notice to the Indemnified Party, may assume the defense of any such claim or legal proceeding with counsel reasonably satisfactory to the Indemnified Party including, but not limited to, the sole right to settle such claim or litigation. The Indemnified Party shall be entitled to participate in the defense of any such action, with its counsel and at its own expense. If the Indemnifying Party does not assume the defense of any such claim or litigation resulting therefrom, the Indemnified Party may, but shall not be obligated to, defend against such claim or litigation in such manner as it may deem appropriate including, but not limited to, settling such claim or litigation, after giving notice of such assumed defense to the Indemnifying Party, on such terms as the Indemnified Party may deem appropriate, subject to the consent of the Indemnifying party (which shall not be unreasonably withheld), and no action taken by the Indemnified Party in accordance with such defense and settlement in accordance with the foregoing shall relieve the Indemnifying Party of its indemnification obligations herein provided with respect to any damages resulting therefrom. In any event, the damages any party shall be entitled to under this Lease shall be limited to the total amount of any Leased Silver, both only as provided for in this Lease.

**8. MISCELLANEOUS:**

(a) **Notices.** Any notice, desired or necessary hereunder, shall be given in writing and either hand or courier delivered, facsimile transmitted with receipt confirmed, telexed or mailed with proper postage prepaid, certified, return-receipt requested. If hand or courier delivered, facsimile transmitted or telexed, any such notice shall be effective upon delivery. If mailed, such notice shall be effective on the second business day following

mailing. Notices to parties hereto shall be to the address stated below or such successor address as may be specified by notice hereunder. The addresses are as follows:

If to Lessor:

> John Glahn
> 3501 S Park Ave
> Joplin            MO      64804
> Facsimile: (417) 499-0228

If to the Lessee, to:

> West Hills Capital, LLC
> Attention: Joe Unger
> 1314 N. Oliver #8348
> Wichita, Kansas 67208
> Facsimile: 888-371-0837

(b)     **Further Assurances.** After the Lease Commencement Date, Lessor shall, from time to time, at the request of Lessee, and without further expense to Lessor, execute and deliver, or cause other parties including but limited to the custodian of its self-directed IRA to execute and deliver, such other instruments of conveyance and transfer (including powers of attorney) as Lessee may reasonably request, in order to more effectively consummate the transactions contemplated hereby.

(c)     **Severability and Waiver.** Except as otherwise provided by this Lease, the invalidity or unenforceability of any provision of this Lease will not affect the enforceability or validity of remaining provisions and this Lease will be construed in all respects as if such invalid or unenforceable provision were omitted. No provision of this Lease may be waived except in a writing signed by the waiving party. No oral statements, course of conduct, or course of dealing will be deemed to constitute a waiver. No waiver by any party of any breach of this Lease will be deemed or construed to constitute a waiver of any other breach or as a continuing waiver of any breach.

(d)     **Time is of the essence.** Time is of the essence with respect to all of the provisions of this Lease.

(e)     **Expenses.** Except as otherwise specifically provided herein, each of the parties shall pay all costs and expenses incurred or to be incurred by it in negotiating and preparing this Lease and in closing and carrying out the transactions contemplated by this Lease.

(f)     **Applicable Law.** This Lease shall be construed, enforced and governed by the laws of the State of Kansas, without giving effect to provisions thereof regarding conflicts of laws. Each party hereby irrevocably submits to the exclusive jurisdiction of the Eighteenth Judicial District Court, Wichita, Sedgwick County, Kansas, U.S.A., or in the United States District Court for the District of Kansas at Wichita, Kansas, U.S.A, in respect of any claim relating to the interpretation and enforcement of the provisions of this Lease or arising from the subject matter of this Lease, and hereby waives, and agrees not to assert, as a defense in any action, suit or proceeding in which any such claim is made that it is not subject thereto or that such action, suit or proceeding may not be brought or is not maintainable in such courts or that the venue thereof may not be appropriate or that this Lease or any such document may not be enforced in or by such courts.

(g) **Counterparts.** This Lease may be executed in any number of counterparts, each of which will be deemed an original but all of which together will constitute one instrument.

(h) **Binding Effect and Assignment.** This Lease will be binding upon and inure to the benefit of the parties as well as their respective successors and permitted assigns.

(i) **Merger and Modification.** This Lease constitutes the entire agreement between the parties with respect to its subject matter, and all prior discussions, negotiations, and agreements between the parties with respect to such subject matter are deemed merged into this Lease. No amendment or modification of this Lease will be enforceable except if in writing and signed by the party against whom enforcement is sought.

(j) **Prevailing Party.** In the event of any litigation arising out of or related to this Lease, the prevailing party shall be entitled to recover from the other party all reasonable costs and expenses incurred, including but not limited to, reasonable professional fees, including attorney's fees.

(k) **Facsimile Signatures.** For purposes of this document and any addenda, attachments or amendments thereto, the parties agree to accept as original facsimile or electronic signatures.

By signing this Lease, the parties acknowledge that they have read it, that they understand its terms, and that they are signing voluntarily.

**LESSOR:**

John Glahn

By: _/s/ John Glahn_
John Glahn (May 8, 2019)

May 8, 2019, individually

**LESSEE:**

West Hills Capital, LLC

By: _____

Name: _____

Title: _____

Date Accepted: _____